## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAN HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  04-1391-MLB |
| | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## **MEMORANDUM AND ORDER**

### I.   **INTRODUCTION**

Before the court are the following:

(1) United States Magistrate Judge John Thomas Reid's Recommendation and Report (Doc. 15);

(2) Defendant's objections (Doc. 16); and

(3) Plaintiff's response (Doc. 17).

Magistrate Judge Reid's August 29, 2005, Recommendation and Report recommends that this case be reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g).  Defendant objects to Magistrate Reid's determination that the ALJ failed to evaluate the entire report of Dr. Moeller and that the finding of illiteracy raises serious questions about plaintiff's ability to perform simple unskilled work.  (Doc. 15 at 12-14).  After reviewing the appropriate portions of the administrative record as well as the briefs submitted to Magistrate Judge Reid, the court adopts the Recommendation and Report.  The decision of the Commissioner is reversed and remanded.

### II. **STANDARDS OF REVIEW**

The standards this court must employ upon review of defendant's

objection to the Recommendation and Report are clear. See generally 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. First, only those portions of the Recommendation and Report defendant specifically identified as objectionable will be reviewed. See Gettings v. McKune, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000). Second, review of the identified portions is de novo. Thus, the Recommendation and Report is given no presumptive weight. See Griego v. Padilla, 64 F.3d 580, 583-84 (10th Cir. 1995).

The ALJ's decision is binding on the court if supported by substantial evidence. See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. See Castellano v. Sec'y of Health and Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (interpreting "substantial evidence" as found in the original form of section 10(e) of the NLRA)). "Evidence is not substantial 'if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'" Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

**III. ANALYSIS**

Plaintiff seeks disability insurance benefits and supplemental

security income payments and thus bears the burden of proving a disability within the meaning of the Social Security Act. See Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A) (2000). The Act further provides that an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (2000).

To determine whether plaintiff is disabled, the Commissioner applies a five-step sequential evaluation: (1) whether plaintiff is currently working, (2) whether she suffers from a severe impairment or combination of impairments, (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation, (4) whether plaintiff's RFC prevents her from continuing past relevant work, and (5) whether plaintiff has the RFC to perform other work. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). "If a determination can be made at any of the steps that claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. at 750.

The ALJ determined that plaintiff had no exertional limitations, but that plaintiff is functionally illiterate and cannot perform work where reading and writing is required. The ALJ further agreed with Dr. Moeller that plaintiff has an extreme inability to carry out

-3-

detailed instructions, a marked inability to understand and remember detailed instructions and a moderate limitation to carry out short and simple instructions. R. at 25. The ALJ determined, at step five, that plaintiff was not disabled since plaintiff would be able to perform unskilled work that exists in significant numbers. Plaintiff asserts that this decision was error because the ALJ failed to consult with a vocational expert.

Plaintiff cites to Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1991), in support of her position that the ALJ was required to utilize a vocational expert. Thompson states that an ALJ is required to utilize a vocational expert when a claimant's RFC is diminished by both exertional and nonexertional impairments, which was the factual situation in Thompson. Id.; see also Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991). Here, plaintiff has no exertional impairments, so Thompson does not support plaintiff's position. The ALJ was not required to consult a vocational expert.

Plaintiff also asserts that it was error for the ALJ to refer to the medical-vocational guidelines (the grids), citing the Tenth Circuit's admonition in Hargis v. Sullivan, 945 F.2d 1482 (10th Cir. 1991), that the "grids should not be applied conclusively in a particular case, however, unless the claimant could perform the full range of work required of that category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range. Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984). Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as . . . mental impairments." Id. at 1490; footnote omitted.

The grids located at 20 CFR Pt. 404, Subpt. P, App. 2, contain case situations in which a decision of disabled or not disabled is required. The regulations require that the ALJ give consideration to the case situations located in the grids. See 20 CFR Pt. 404, Subpt. P, App. 2; S.S.R. 85-15. Given plaintiff's RFC, the grids support a finding by the ALJ of not disabled. See 20 CFR Pt. 404, Subpt. P, App. 2 R. 201.23, 202.16, 203.25. However, an "ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson, 987 F.2d at 1488.

The ALJ did not cite either Thompson or Hargis, so a certain amount of interpretation of the ALJ's decision is required. The court interprets the decision to say that plaintiff had no significant nonexertional impairment. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." S.S.R. 85-15, 1985 WL 56857, *4. The ALJ noted that plaintiff's limitations in her ability to carry out or understand detailed instructions would not significantly impair her ability to perform unskilled work, since unskilled work does not require these skills. Moreover, he found that her illiteracy would not be considered a significant impairment since "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data

-5-

or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 CFR Pt. 404, Subpt. P, App. 2(i).

Finally, the ALJ determined that plaintiff was only moderately limited in the ability to carry out simple instructions. Moderately limited indicates that plaintiff is still able to function satisfactorily. R. at 186. Accordingly, substantial evidence supports the ALJ's presumptive finding that plaintiff has no significant nonexertional impairment that would preclude her from performing unskilled work.

Substantial evidence also supports a finding that plaintiff is able to the full range of work at some RFC level on a daily basis. Plaintiff has no exertional limitations. Plaintiff is only moderately limited in carrying out simple instructions, but can function satisfactorily at this task. Plaintiff is able to substantially perform all tasks required for unskilled work.

The third requirement is that plaintiff can perform most unskilled jobs. It is here that both Magistrate Judge Reid and this court have problems with the ALJ's decision. "Jobs which can possibly be performed by persons with solely nonexertional impairments are not limited to the approximately 2,500 unskilled sedentary, light and medium occupations which pertain to the table rules in Appendix 2. The occupational base cuts across exertional categories through heavy (and very heavy) work." S.S.R. 85-15, 1985 WL 56857, *3. Plaintiff's illiteracy and lack of work experience do not substantially impact the occupational base.

[T]he lack of relevant work experience would have little

>significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English.

20 CFR Pt. 404, Subpt. P, App. 2(i).  <u>Nevertheless</u>, the ALJ's failure to fully discuss Dr. Moeller's opinion that plaintiff is presently disabled and his failure to consider the opinion of a vocational expert[1] preclude a finding that substantial evidence supports the ALJ's presumptive determination that plaintiff can perform most of the jobs in the applicable RFC level.  In this regard, SSR 85-15 (cited by the ALJ) <u>requires</u> the ALJ to consider sections 404.1562-404.1568 and 416.962-416.968.  The ALJ does not mention these sections and the court will not assume that he considered them.

Accordingly, the ALJ's exclusive use of the grids was error.  This is not to say that his ultimate conclusion that plaintiff is not disabled was erroneous, however.  The ALJ may well reach the same conclusion on remand.  The case is remanded pursuant to sentence four for further proceedings to address the magistrate judge's and this court's concerns expressed herein.

**IV.  CONCLUSION**

The court adopts the Report and Recommendation of the magistrate.  This case is remanded for further proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

A motion for reconsideration of this order pursuant to this

---

[1] Interestingly, the record contains the resume' of a vocational expert, Danny Zumalt.  (R. at 20-25).  Its inclusion in the record is unclear, however, and the ALJ makes no mention of Zumalt in his decision.

-7-

court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 29th day of November 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE